## Case No. 13,145.

### SNOW v. EDWARDS.

[2 Lowell, 273; 7 Am. Law Rev. 362.] [1]

District Court, D. Massachusetts. Sept., 1873.

PRACTICE IN ADMIRALTY—DECREE—REHEARING—DEFAULTED ACTIONS—LIBEL FOR REVIEW.

1. Courts of admiralty have power to vary their own decrees.

[Cited in The Madgie, 31 Fed. 927.]

2. In the American practice, a summary rehearing, on motion, can be granted only during the term at which the decree was made.

3. In defaulted actions. the summary jurisdiction to rehear is limited to ten days, irrespective of terms of court, by admiralty rule 40 of the supreme court.

4. After the term has passed in ordinary cases, and after ten days in defaulted cases, the court can entertain a libel of review.

5. Decisions and dicta on the foregoing subjects examined.

6. In a libel for review by the defendant in a defaulted action. he may contradict the officer's return in that action.

Review in admiralty. A libel for wages of the libellant's minor son on two fishing voyages was filed in December, 1871. The marshal returned personal service on the defendant [Joseph Edwards], and he was defaulted; and, after an ex parte hearing, a decree was rendered for the libellant, [Ephraim Snow] Jan. 18, 1872, and execution was issued after the lapse of ten days thereafter. On the 4th of February the defendant in that suit petitioned for a stay of proceedings and a review, on affidavit that he had received no notice of the action, and had a valid defence to the merits thereof. Upon this an order to show cause was issued; but, owing to the death of one of the proctors, nothing was done about the case until now, when the libellant moved to dismiss the petition for a rehearing.

A. French, for petitioner.

F. Goodwin, for respondent.

LOWELL, District Judge. Doubts have sometimes been expressed whether an admir-

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission. 7 Am. Law Rev. 362, contains only a partial report.]

alty court could vary its own decrees. But it will be found that, with the exception of two decisions in the court of appeal in prize causes, those doubts have been thrown out in cases which called for no decision of the question, and that, whenever the point itself has been passed upon, the power has been found to exist, and has been exercised.

The earliest recorded doubts, and those which have exercised the greatest influence on the minds of succeeding judges, are those of Lord Stowell, expressed in The Vrou Hermina, 1 C. Rob. Adm. 168, and The Fortitudo, 2 Dods. 58, in passages often cited and variously interpreted, though they are considered by Mr. Justice Story, Judge Sprague, and Mr. Chitty, to mean that the power exists, though it should be cautiously exercised. 2 Chit. Gen. Prac. 538; The New England, infra; Janvrin v. Smith, infra. If we turn from the dicta of this learned judge to his decisions, we shall find, in two cases, not so often quoted as the dicta, that he varied his own decrees. In The Herstelder, 1 C. Rob. Adm. 114, Sir W. Scott had condemned a Dutch vessel as prize; and, in a note at the end of the report (page 118), we are told that the court, fifteen days afterwards, expressed great dissatisfaction that the vessel was lying in a port in Norway instead of at Plymouth, as described in the proceedings, and he ordered the register to annul the decree. This is decisive, for the jurisdiction of the court to pass on the question of prize in such circumstances was undoubted; and it was, therefore, a reversal of a valid decree. The Fortuna, 4 C. Rob. Adm. 278, seems to me an almost equally important case in this discussion. There, a final decree had been made to restore a cargo, and afterwards the captors came in and asked for an allowance for freight; and the court so ordered, although the objection was taken that the order would be ultra vires. It is true that this proceeding is called a new case in one part of the report; but it was really an opening of the decree between the same parties, and what had been an absolute order for restoration was changed to a conditional one. If it was a new case at all, it must have been by way of review.

In 1839, Dr. Lushington varied a decree which had been made by his predecessor. The Monarch, 1 W. Rob. Adm. 21. And this case has, I suppose, fully established the practice in England. Coote, Adm. Prac. 63. It may be said that the decree was interlocutory; but it was one which disposed of the merits of the cause, leaving only damages to be assessed; so that it was a final decree, excepting for the purposes of an appeal, and no distinction was taken on that ground; but the power was denied in argument on the authority of The Elizabeth, 2 Act. 58. That book I have not at hand; but, from the statement of the case in 2 Pritch. Adm. Dig. tit. "Practice," No. 1,058, it seems that the court of appeals refused to vary its own decree, as being contrary to its practice. In The Geheimrath, reported in a note to The Elizabeth, the same court is said to have intimated that there might be a remedy in another shape, understood by Story, J., to mean a libel of review. The New England [Case No. 10,151]. As to The Elizabeth, it may be observed that a court of appeal may well establish a different practice from that which would be proper for one of original jurisdiction, because in the court of appeal there is much less room for surprise and mistake; indeed, scarcely any danger, except from absolute fraud, which, I suppose, any court would relieve against. I may add, that our court of last resort is understood to be ready to revise its own judgments during the term, and in some exceptional cases afterwards. Hudson v. Guestier, 7 Cranch [11 U. S.] 1; The Palmyra, 12 Wheat. [25 U. S.] 1; Alviso v. U. S., 6 Wall. [73 U. S.] 457. But whatever may have been the practice in the court which decided The Elizabeth, it is not binding on the court of admiralty, as appears by The Monarch.

In the American cases, too, some doubts have been expressed by eminent judges; but the decisions have varied former decrees. See United States v. The Glamorgan [Case No. 15,214]; The Enterprise [Cases Nos. 4,497 and 4,500]; The New England [supra]. We find a distinction taken in this country between a summary application to the court during the term at which the decree was made, and a libel of review after the term has passed. Terms of court were not known in equity and admiralty, and are still of little consequence in those courts; but, under the statutes of the United States, which appoint terms for all courts, the practice has grown up of considering decrees in equity as enrolled at the end of the term, by analogy to the practice at law. During the term, the decrees can be reviewed on motion or petition, and afterwards by bill of review, at any time within five years. Cameron v. M'Roberts, 3 Wheat. [16 U. S.] 591; McMicken v. Perin, 18 How. [59 U. S.] 507; Brockett v. Brockett, 2 How. [43 U. S.] 238; Whiting v. Bank of U. S., 13 Pet. [38 U. S.] 6; Story, Eq. Pl. § 403.

Mr. Justice Curtis decided that courts of admiralty are within the rule which limits the power to grant a summary rehearing to the term at which the decree was rendered. United States v. The Glamorgan [supra]. And no doubt he would, if the case had required any decision of the affirmative, have held that during the term they had such a power; for it is one that all courts in this country, civil and criminal, exercise, when justice requires it. In 1830, Judge Betts decided that he could not vary his decree, on motion, after the term. The Martha [Case No. 9,144]. He doubted whether any practice had been established in the admiralty courts to vary decrees at any time, or under any circumstances, though he said they had a clear right to establish such a practice; and he further doubted whether all power was not gone when final process had been executed. In 1838, the same learned

judge published his Hand-Book of Practice, in which he repeated and enlarged on these opinions; and in the same year he made rules Nos. 156 and 157, for the practice of his court upon this subject, by which he required a summary motion for rehearing to be made at the term, and required libels for review to be filed before enrolment of the decree or the return of final process; meaning, perhaps, the enrolment when no final process was required, and the return of the process, when there was any. The decision of The Martha, refusing to vary a decree, on motion, for a mistake of law, after the term had passed, was in accordance with American practice. But if the reasons for the judgment were, as they appear to have been, that a court can enlarge its own powers by a rule of its own making, or that it should refuse to exercise an admitted power until it has seen fit to regulate its own practice, they cannot so well be defended.

In 1839, before the decisions in either The Martha or The Monarch had been published, Mr. Justice Story considered this subject with his usual fulness of research and discussion, and said that he had not the slightest doubt of the competency of a court of admiralty to rehear a cause, pending the term, and before the decree was enrolled. He went on to show that, by the American practice, decrees were usually considered to be enrolled at the end of the term. Concerning a libel of review after the term, his opinion leans decidedly in favor of such a jurisdiction. The New England, ubi supra. Mr. Justice Grier, in the case in which he expresses a doubt about libels of review, considers it clear that the court may grant a rehearing before execution executed, according to a rule of the district court for the Eastern district of Pennsylvania. The Enterprise, ubi supra.

In 1842, Judge Sprague took jurisdiction of a libel of review filed after the term, in an opinion in which he denies the soundness of the distinction taken by Judge Betts, as to process having been fully executed. His reasoning is made with evident reference to the opinion expressed in Judge Betts' book, then lately published, though he does not cite it. Janvrin v. Smith [Case No. 7,220]. In 1846, he granted a rehearing in a case which had been fully tried; and on the rehearing he reversed his former decree, as it would seem from a note at the end of the report of the case. Perkins v. Hill [Id. 10,986]. The records do not show that he entered a formal decree in conformity with his first opinion; but the prevailing party might have had it entered as of course. In 1849, the same learned judge varied a decree fifteen days after it had been made and had been fully executed, by requiring a libellant, on motion of a third person interested in certain proceeds in the registry, to repay into court the sum of one hundred dollars, out of a larger sum which had been decreed him out of those proceeds by a mistake on the libellant's part in making up his decree, and that a mistake not apparent on the record. 21 Records, p. 189; 34 Records, p. 135. In 1865, Mr. Justice Davis, of the supreme court, upheld the jurisdiction of the district court to entertain a libel of review after the term had passed. Northwestern Car Co. v. Hopkins [Case No. 10,334].

It appears, then, that the power of an admiralty court of original jurisdiction to vary its own decrees has been freely exercised in England and in America, and has never been denied in any case that called for a determination of the question, excepting that in America the summary process by motion has been held to be inapplicable after the term, which is the American equivalent of a decree enrolled, and, on the whole, a very convenient one; and excepting that some courts appear to consider the power gone after the return of final process.

There is a further difficulty in this case, from the fact that this was a defaulted action, and rule 40 of the supreme court regulates such actions to a certain extent, by saying that the court of admiralty may, on motion of the defendant and the payment of costs, rescind the decree in any suit in which, on account of his contumacy and default, the matter of the libel shall have been decreed against him, and grant a rehearing thereof, at any time within ten days after the decree has been entered. It cannot be understood that this rule is intended to take away the jurisdiction of libels of review generally, because it makes no mention of any but defaulted actions. If, by mistake or fraud, a libel should be pronounced deserted, or if in any contested case, as were some of those I have above cited, justice could only be had by a libel of review, this rule does not touch them. And, upon consideration, I am of opinion, and so decide, that the supreme court, in passing this rule in 1845, while Judge Story was still on the bench, and must have had in mind the doctrines discussed and the opinions expressed in The New England, did not intend to regulate libels of review at all, but only to do what, indeed, the language of the rule fairly imports, provide for the rights of any defendant to have such an ex parte decree rescinded on motion, though the term should have lapsed within ten days. It is probable that the practice in defaulted actions was in need of regulation at that time. The old practice of the admiralty was very slow and cautious in that class of cases. It required a delay of a year and a day in all actions in rem, where no claimant appeared; and this was recognized as the rule so late as 1839, by the supreme court of Alabama. Read v. Owen, 9 Port. (Ala.) 180; and it is still the rule in prize causes, when condemnation is asked for on mere default. The Julia [Case No. 7,576]. In personal actions, there were monitions, defaults, and decrees, in great numbers, before execution; and, I suppose, by the early practice a decree was not entered on the merits in personal actions until an

appearance had been compelled by attachment. Although, therefore, a mere motion cannot be entertained after ten days, I do not believe the rule was intended to deprive a defendant who has had no notice of the action, or, for any other reason, is entitled to review it, of his libel of review. A claimant, say, in an action in rem, whose ship has been seized, but who has had no actual notice, or was unable to attend; or in the case put by Judge Sprague, of a service by attachment of goods or effects without personal service; or in the case at bar, if it be true that the wrong person was served with process, there is no other remedy; for the appeal, like the motion for rehearing, is limited to ten days.

Janvrin v. Smith [supra] was a defaulted action; but as it was decided about three years before the rules of the supreme court were adopted, it is not an authority for their interpretation; though, in the opinion as published in 1861, there is a reference to the rules as if they existed in 1842, an oversight, no doubt, in revising the opinion for the press, but one which tends to show that Judge Sprague, who himself revised the opinions, saw nothing in the rules adverse to his decision. The case which is reported on appeal as The Enterprise [Case No. 4,497] consisted of two actions, in one of which a decree by default was opened by Judge Sprague; but, on examining the docket and records, I find that the account of the case given is incorrect, in this, that the application was not made after the adjournment of the court without day, but before, and, what is of more importance, it was made within ten days after the decree; so that it is not an authority upon the point now in judgment. However, for the reasons I have given, I think a libel of review may be maintained after ten days.

The last point is, that the officer's return of personal service on the defendant is conclusive. I might have thought so, but for the very important case of Brewer v. Holmes. 1 Metc. (Mass.) 288, in which the supreme court of this state, giving their opinion by Shaw, C. J., held, that on a petition for review under the statute of Massachusetts, which, like a libel for review, is an equitable proceeding, the plaintiff in review, who was the defendant in the original action, might prove, in contradiction of the officer's return, that he had received no notice of the action. By reference to that opinion, it will be found not to rest on any ambiguity in the return, or other circumstance peculiar to that case, as was ably argued before me, but upon the broad doctrine of equity and justice, in contradistinction to technical rules. It was argued in that case that the petitioner might have his remedy against the officer for a false return; to which the learned judge replies: "Supposing he could, which may be doubted, the result would be that the present respondent, the original plaintiff, would have a sum

of money, which, in the case supposed, he had no just claim to recover, and the officer would be compelled to pay a like sum for a slight and perfectly innocent mistake. An officer goes to a house to leave a summons with John Smith. Not knowing the person, he is led to believe, without fault of anybody, that his brother, James Smith, is the man he is looking for; and he leaves the summons with him, and makes his return accordingly. This is a false return. If somebody must necessarily suffer loss, it is, no doubt, right that it should fall on him who made it. But, if it is seasonably discovered in time to prevent loss to anybody, why should not the remedy be applied, and the rights of all parties be secured?" I am content to follow the reasoning and practice of that case.

The application here is scarcely formal enough to be called a libel of review, though it is so indorsed. I think, however, as the whole matter has stood open by the tacit consent of the parties, and no rights have been changed, that I may treat this as an application for leave to file a libel of review. That is an application which should accompany the libel; and the practice should be, I suppose, to hear the preliminary question first, as is done in nearly all cases under the state statute. When I heard argument the other day, I understood that the parties were only prepared to present the legal aspects of the case, and so I did not go into the evidence concerning want of service. It would be hardly worth while to have two more hearings, and I will hear the parties on the whole case. The petitioner should at once prepare a formal libel, of which a precedent will be found in Janvrin v. Smith, 25 Records, p. 345, and I have no doubt the respondent will waive notice; and then the case can be heard as soon as possible on all the questions together. If the decree should be varied, the present respondent will have the right to take all the questions, including the power of this court in the premises, to the court of appeal. Libel of review to be filed within one week.