PETTIT v. ONE STEEL LIGHTER.

(District Court, E. D. New York. August 6, 1900.)

ADMIRALTY—AMENDMENT OF DECREE—EXPIRATION OF TERM.

A court of admiralty has no power to amend a final decree on petition or motion for a rehearing filed after the expiration of the term at which the decree was enrolled, even though error in its findings is shown.

In Admiralty. On petition for supplemental decree.

George H. Pettit, for the United States.
William B. King, for the captors.

THOMAS, District Judge. The final decree herein was entered on May 7, 1900, at a term which expired on June 5th. A petition for a supplemental decree was filed July 24th. The statute provides that the terms of this court shall begin on the first Wednesday of every month. Hence the May and June terms have expired since the entry of the decree. The court has no power to disturb its own judgment upon motion for a rehearing after the expiration of the term at which the decree was enrolled (Snow v. Edwards, 2 Low. 273, Fed. Cas. No. 13,145), although a bill of review after the expiration of the term may be entertained for certain purposes (Thompson v. McIntosh, [D. C.] 100 Fed. 890). Hence the court may not amend the decree herein, even if error in the findings be proven. But the suggested evidence of error is insufficient. The court is advised of the report of the navy department to the effect that the finding of the court as to the status of Lieut. Com. Marix is not in accordance with the records of the bureau of navigation, and that the status of Lieut. J. L. Purcell, commanding the Osceola, was the same as that of Lieut. Com. Marix. If the court were permitted to open the judgment, it would be embarrassed in the adoption of this opinion by the fact that on July 2d, Lieut. Purcell reported the engagement of the Osceola off Manzanillo directly to the commanding officer of the United States ship Scorpion, which is persuasive evidence that Lieut. Com. Marix was Lieut. Purcell's superior officer in the undertaking. When the question of equality or superiority arises at this time, Lieut. Purcell's practical recognition at that time furnishes a valuable guide to the fact. This recognition seems to conform to Navy Regulations, c. 2, art. 18, par. 4:

"At all times and places not specifically provided for in these regulations, where the exercise of military authority for the purpose of co-operation or otherwise is necessary, of which the responsible officer must be the judge, the senior line officer on the spot shall assume command and direct the movements and efforts of all persons in the navy present, subject to the limitations of article 1066."

It is true that Lieut. Com. Marix and his vessel were under the command of Rear Admiral Sampson, as the commander in chief of the United States naval forces, North Atlantic station, who in his turn was under the command of his superior; but apparently Lieut. Com. Marix, within his sphere of action, was independent. He was sent by Rear Admiral Sampson "on June 29th, and arrived off Cape Cruz on June 30th, with orders to report to the senior officer off that station, and with additional verbal orders from the chief of the staff to try to capture or destroy the Spanish gunboats reported to be in Manzanillo." See the report of Lieut. Com. Marix, under date of September 29, 1898 (appendix to the report of the chief of the bureau of navigation, navy department, 1898). Such report also states:

"Further information from him made me expect to find the Manning, Hist, Hornet, and Wompatuck off that place to assist in the attack. None of the vessels were there, but when the Osceola arrived that same afternoon we received permission from the commanding officer of the St. Louis, who was there temporarily, to go up and see what we could do."

The Scorpion and Osceola did go off Manzanillo to see what they could do, and were endowed with discretion to take action; such action undoubtedly being in furtherance of the general purpose and orders of the rear admiral. But, so far as the court is advised, at the time of the capture the Scorpion was not "under the command of the commanding officer of a fleet or squadron, or a divison of a fleet or squadron," in the sense intended by section 4631, Rev. St. U. S., but was acting independently of such officer, albeit the general purpose of the attacking vessel was to carry out the general command of such officer. The commanding officer was between 100 and 200 miles away, and in fact did and could give no definite direction to the vessels. Indeed, they received nothing more than permission from the commander of the St. Louis to see what they could do, and the St. Louis was remote from the place of capture. Even if the court had power to amend the judgment at the present time, it would be unable to defer to the conclusion of the navy department without a satisfactory statement of the grounds of such conclusion. Pursuant to the foregoing views, the relief sought by the petition must be denied.